IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN WALSH and ROSEMARY WALSH**<br><br>      **PLAINTIFFS**<br><br>**vs.**<br><br>**AMGUARD INSURANCE COMPANY**<br>      **DEFENDANT** | **CIVIL ACTION**<br><br><br><br>**NO. 1:21-CV-13160 KMW / MJS**<br><br>**JURY TRIAL DEMANDED** |

## JOINT FINAL PRETRIAL ORDER

  The following shall constitute the Final Pretrial Order pursuant to Rule 16, Federal Rules of Civil Procedure. This Final Pretrial Order shall govern the conduct of the trial of this case. Amendments to this Order will be allowed only in exceptional circumstances to prevent manifest injustice. See Fed. R. Civ. P. 16(e). Counsel are urged to move to amend in a timely fashion any portion of the Order that must be changed or modified between the filing of the Order and the trial date.

**APPEARANCES:**

| For Plaintiff: | For Defendant: |
|---|---|
| Anthony J. DiUlio, Esquire<br>Wheeler DiUlio & Barnabei<br>1650 Arch St., Suite 2200<br>Philadelphia, PA 19103<br>**Phone** 215-971-1000<br>**Fax** 215-568-2901<br>adiulio@wdblegal.com | Charles B. Stokes, Esquire<br>Russo & Gould, LLP<br>The Hale building, 3rd Floor<br>100 S. Juniper Street<br>Philadelphia, PA 19107<br>**Phone** 215-874-6816<br>**Fax** 215-244-0517<br>cstokes@russogould.com |

  **PART I.**  **JURISDICTION AND BRIEF SUMMARY OF THE CASE:**

  Jurisdiction is based on is 28 U.S.C. § 1332, Diversity of Citizenship. This matter was

removed by Defendant from Burlington County, New Jersey Superior Court.

  This is a breach of contract claim for benefits under a policy of homeowner's insurance

issued to Plaintiffs John and Rosemary Walsh by Defendant AmGUARD covering a single-

family residence located at 299 Medford Lakes Road, Tabernacle, New Jersey 08088 (hereinafter

1

referred to as "the subject premises").  Specifically, Plaintiffs allege that the property and contents were damaged by water infiltration allegedly caused by wind damage to the roof on an unspecified date prior to its discovery on August 26, 2019.   The situation was discovered when the Walshes and one of their contractors were checking on the status of the house.

Defendant disputes the nature and amount of damages arising from the alleged August, 2019 event.  Defendant does not concede that there was a weather event on or shortly before August 26, 2019 that resulted in damage to the subject premises.

Defendant alleges that most or all of the damage claimed by Plaintiffs resulted from an event that occurred on July 16, 2018, when one of the Walshes' children left an upstairs bathroom faucet running for several hours, resulting in extensive interior water damage.  At the time of the 2018 event, Plaintiffs were insured by Nationwide/Harleysville Insurance Company, which eventually adjusted the claim for approximately $101,000.

At the time of the 2019 event, the interior of the house was partially demolished, and the property was still uninhabitable from the 2018 event.

The parties' valuation experts disagree not only on causation but on the extent, nature and valuation of the claimed damage.

Plaintiffs seek approximately $637,000 in damages.  Defendant adjusted their claim for approximately $73,000.

**PART II.**     **STIPULATED FACTS:**

1. Plaintiffs John and Rosemary Walsh are and at all relevant times were the owners of the subject premises.

2. On August 26, 2019, a homeowner's insurance policy issued by AmGuard was in full force and effect.

3. The AmGUARD policy carried the following policy limits:
   a. Dwelling: Limits disputed

    b. Contents: $200,000 + any percentage increase in Coverage A
    c. Adjusted Living Expenses: $120,000 + any percentage increase in Coverage A
    d. Mold/Fungus: $10,000

4. On July 16, 2018, the subject premises sustained interior water damage when one of the Walshes' children left an upstairs bathroom faucet running for several hours.

5. On August 26, 2019, work to repair damage from the 2018 event had not been completed.

6. On July 16, 2018, the subject premises was covered by homeowner's policy issued by Nationwide Insurance Company.

7. Plaintiffs' claim against Nationwide was still pending on August 26, 2019.

8. Nationwide's estimate for damages from the 2018 event was in the amount of $101,632.70 ACV payment.

## PART III.  PLAINTIFFS' CONTESTED FACTS:

1. Plaintiffs intend to prove the following contested facts with regard to liability:

    This is an action to recover benefits due under a policy of insurance issued by Defendant, AmGuard Insurance Company ("Defendant" or "Guard"), to Plaintiff, John and Rosemary Walsh ("Plaintiffs"), covering Plaintiffs' property located at 299 Medford Lakes Rd., Tabernacle, NJ 08088 ("the Property"). Plaintiffs' property is covered under a Homeowners' Policy ("the Policy") which includes all-risks coverage for damages to the dwelling and personal property; specifically, the Policy includes coverage for all direct physical loss to the Property not expressly excluded by the Policy. The policy period for the Policy ran from December 7, 2018, until December 7, 2019.

    On or about August 26, 2019, while said policy was in full force and effect, Plaintiffs suffered a sudden and accidental direct physical loss to the insured premises. Specifically, water entered through the roof, causing severe water damage throughout the Property. Notably, Plaintiffs were not physically at their Property at the time of loss as repairs were still being made from a prior loss from 2018. At the time of the prior loss, Harleysville Insurance Company of New Jersey covered the Property. Neither party disputes the 2018 loss occurred prior to the Defendant providing coverage for Plaintiffs' property and Plaintiffs are not seeking damages from the 2018 loss in this action.

    Plaintiffs retained QAC Restoration to provide restoration services. This included removing areas throughout the Property which had been damaged by water. Due to the extensive nature of this loss, these services cost a total of $184,194.79. QAC Restoration handled the restoration services from the 2018 loss as well; they have

documented the difference in damages between these two losses through reports, photographs, and invoices/estimates.

Plaintiffs also retained Rainbow Restoration to address the damaged contents throughout the Property. These services included going through each personal contents item throughout the house, determining what could be salvaged, and then cleaning and storing items these items. The total value of Rainbow's services to date is $71,726.26. Since many items are still in storage, these costs continue to grow. Plaintiffs produced an inventory of the total personal items which were damaged and not salvageable, which totaled $98,891.00.

Plaintiffs hired Andrew Weaver from The Weaver Adjustment Group, LLC, a licensed public adjuster, to adjust their claim and communicate with Guard. Mr. Weaver determined the cause of loss was sudden water damage and determined the cost of necessary repairs to be $456,143.01.

As a result of the loss, Plaintiffs were unable to reside at the Property until the damages were repaired. Defendant issued several payments for the dwelling damages, totaling $48,870.26. They also made payments for adjusted living expenses (ALE) in the amount of $24,810.00. However, Defendant refused to continue paying Plaintiffs' rental costs after January 2020, despite knowing that Plaintiffs were still unable to return to their home.

The loss was reported to Defendant in a timely manner and Plaintiffs have fully complied with all the terms and conditions required by the policy. Despite Plaintiffs' full cooperation and production of evidence pertaining to the covered loss, Defendant partially denied Plaintiffs' claim and has refused to pay Plaintiffs the benefits due and owing under the policy. Due to the significant scope of the damages and Defendant's sever underpayment of benefits under the Policy, Plaintiffs continue to remain displaced from their home, four years removed from the loss. Plaintiffs' total losses are now in excess of $800,000, made worse by Defendant's blatant refusal to provide benefits owed under the insurance contract. However, Plaintiffs are constrained by the limitations set in place by the Policy. After accounting for these limitations, Defendant is withholding $857,274.80.

2. Plaintiffs intend to prove the following contested facts with regard to damages:

**Dwelling**

*The Policy also provides additional protection for debris removal, which is equal to 5% of the total damage*

| | |
|---|---:|
| QAC Restoration: | 184,194.79 |
| Weaver Adjustment: | 456,143.01 |
| (less payments) | (48,870.26) |
| | **591,467.54** |

**Contents**           (Policy Limit - $200,000)

| | |
|---|---:|
| Rainbow Restoration: | 71,726.26 |

| | |
|---|---|
| Contents – Furniture: | 98,891.00 |
| _(less payments)_ | _(none)_ |
| | 170,617.26 |
| ***Total*** | ***$170,617.26*** |

**Adjusted Living Expenses        (Policy Limit - $120,000)**
*\*In addition to the $24,810.00 in payments made by Guard*

| | |
|---|---|
| Storage and Rental Costs: | 100,000.00+ |
| | 100,000.00+ |
| ***Applying Policy Limits*** | ***$95,190.00*** |

**TOTAL AMOUNT IN DISPUTE        =        $857,274.80**

### PART IV.    DEFENDANT'S CONTESTED FACTS:

1. Defendant intends to prove the following contested facts with regard to liability and damages:

   a. Most, if not all, of the damages claimed by Plaintiff resulted directly or indirectly from the 2018 storm.

   b. Many of the items claimed by Plaintiffs and their expert to result from the 2019 event were also claimed in the 2018 claim.

   c. Much of the damage claimed by Plaintiffs and their expert to result from the 2019 event is related to mold and/or fungus, which is likely related to the 2018 event.

   d. Regarding the claims for mold and/or fungus-related damages, Defendant AmGUARD has already paid the full $10,000 limit for this type of damage.

   e. Photographs taken after the 2019 event show roofing shingle material resting on the roof, which is inconsistent with Plaintiffs' contention that the 2019 event involved winds strong enough to have dislodged roofing materials and blown them completely off the roof.

   f. Photographs taken after the 2019 event show metal flashing around a chimney stack which appears to have been forcibly pulled out of position.

   g. The payment by AmGUARD of $72,680.26 to resolve their claim from the 2019 event more than compensated Plaintiffs for any losses from that event.

5

**PART V.     WITNESSES AND SUMMARY OF TESTIMONY:**

A. <u>Plaintiffs' Witnesses (names and addresses) and Summary of Their Testimony:</u>

1. Liability and Damages:

   **Plaintiff, John Walsh and Rosemary Walsh**: They will testify regarding the events that led to this loss, the conditions of the property, the conduct of the insurance carrier, the adjustment of the loss, the damages sustained, the repairs completed, the mitigation completed, the work that still needs to be done, the living conditions throughout this process, the additional living expenses, and the effect on their family.

   **Andrew Weaver** (2938 Columbia Ave STE 101, Lancaster, PA 17603 ) (as a fact and expert witness): He will testify to his observations at the property during the inspections, the conduct of the carrier, the damages he witnessed, the timeline of events through the adjustment of the claim. He will testify as to the cause of loss, the coverage available under the policy, and the cost of those repairs.

   **Klodian Belgu (**QAC Restoration LLC, 956 Continental Ave Toms River NJ 08753) (fact and expert): He will testify to his visual inspection of the property, the damages he witnessed, the necessary and proper repair/mitigation method for those damages, and the actual process of repairs his company completed at the property.

   **Ervin Culiu** (Rainbow Restoration, 1500 Rt 206, Tabernacle, NJ 08088 ) (Fact and expert witness): He will testify in accordance with his report as well as his own investigation and observations at the property.

2. Damages:

   **Andrew Weaver** (2938 Columbia Ave STE 101, Lancaster, PA 17603 ) (as an expert): He will testify as to the cost of the necessary repairs following the mitigation work completed by the mitigation company.

   **Klodian Belgu ) (**QAC Restoration LLC, 956 Continental Ave Toms River NJ 08753) (fact and expert): He will testify to his visual inspection of the property, the damages he witnessed, the necessary and proper repair/mitigation method for those damages, and the actual process of repairs his company completed at the property.

   **Ervin Culiu** (Rainbow Restoration, 1500 Rt 206, Tabernacle, NJ 08088 ) (Fact and expert witness): He will testify in accordance with his report as well as his own investigation and observations at the property.

B. <u>Defendant's Objections to Plaintiff's Witnesses:</u>

   None

C. <u>Defendant's Witnesses (names and addresses) and Summary of Their Testimony:</u>

6

1. Liability and Damages (all of Defendant's witnesses will testify as to liability and damages):

**Jamie Sabatini, AIC**, AmGUARD Insurance Company, 39 Public Square, Wilkes-Barre, PA 18703, will testify as a fact witness regarding the terms and conditions of the AmGUARD policy; as to the procedure by which the Plaintiffs' claim was evaluated and adjusted; as to communications between AmGUARD and Plaintiffs; and as to the contents of AmGUARD's claim files.

**Brian Pancza**, Eberl Claims Service, 2900 S. Wadsworth Blvd., Suite 800, Lakewood, CO 80235, will testify as a fact and expert witness regarding his inspection of the subject premises, his analysis and evaluation of damages arising from the August 2019 event, if any, and his findings of fact and conclusions as set forth in his Appraisal Report dated June 19, 2020.

**David M. Bekus**, DM Bekus Construction Services, LLC, 45 Hunt Lane, Skillman, New Jersey 08558, will testify as an expert witness regarding his inspection of the subject premises, his findings and conclusions as to causation and the nature and extent of damages related to the August 2029 event, if any, his review and analysis of the AmGUARD and Nationwide claim files, and his review, analysis and critique of the report and deposition testimony of Plaintiff's valuation expert, Andrew Weaver.

D.  Plaintiffs' Objections to Defendant's Witnesses

No objections as stated. To the extent a different witness is presented, Plaintiff reserves the right to object. Plaintiff also reserves the right to object to any expert testimony outside the reasonable inferences of any documents produced.

**PART VI.   EXPERT WITNESSES**

1. Plaintiffs' expert witnesses are:

    **Andrew Weaver** (as a fact and expert witness): He will testify to his observations at the property during the inspections, the conduct of the carrier, the damages he witnessed, the timeline of events through the adjustment of the claim. He will testify as to the cause of loss, the coverage available under the policy, and the cost of those repairs.

    **Klodian Belgu** (fact and expert): He will testify to his visual inspection of the property, the damages he witnessed, the necessary and proper repair/mitigation method for those damages, and the actual process of repairs his company completed at the property.

    **Ervin Culiu** (Fact and expert witness): He will testify in accordance with his report as well as his own investigation and observations at the property.

2. Defendant's objections to the qualifications of Plaintiffs' expert witnesses are:

   None

3. Defendants' expert witnesses are:

   **David M. Bekus**, DM Bekus Construction Services, LLC, 45 Hunt Lane, Skillman, New Jersey 08558, will testify as an expert witness regarding his inspection of the subject premises, his findings and conclusions as to causation and the nature and extent of damages related to the August 2029 event, if any, his review and analysis of the AmGUARD and Nationwide claim files, and his review, analysis and critique of the report and deposition testimony of Plaintiff's valuation expert, Andrew Weaver.

   **Brian Pancza**, Eberl Claims Service, 2900 S. Wadsworth Blvd., Suite 800, Lakewood, CO 80235, will testify as a fact and expert witness regarding his inspection of the subject premises, his analysis and evaluation of damages arising from the August 2019 event, if any, and his findings of fact and conclusions as set forth in his Appraisal Report dated June 19, 2020.

4. Plaintiffs' objections to the qualifications of Defendant's expert witness are:

   No objections as stated. To the extent a different witness is presented, Plaintiff reserves the right to object. Plaintiff also reserves the right to object to any expert testimony outside the reasonable inferences of any documents produced.

**PART VII.    EXHIBITS**

1. Plaintiffs intend to introduce the following exhibits into evidence:

| **Plaintiff Exhibits** | **Objections** |
|---|---|
| P1.  QAC estimate | |
| P2.  QAC report | |
| P3.  Rainbow CV | |
| P4.  Rainbow Invoice | |
| P5.  Rainbow report | |
| P6.  ServePro Photo Report 10-6-20 | |
| P7.  Weaver CV | |
| P8.  Weaver estimate | |

| | |
|---|---|
| P9. Weaver report | |
| P10. Contents Inventory | |
| P11. Estimate from Guard | |
| P12. payment summary from Guard | |
| P13. QAC CV | |
| P14. Photos of loss from QAC | |
| P15. Photos of loss from Guard | |
| P16. Photos of loss from Nationwide | |
| P17. ALE Calculation Sheet | |
| P18. ServPro Photos | |
| P19. Nationwide Claim Documents | |
| P20. Correspondence History between Plaintiff and Defendant | |
| P21. Defendant's Response to Interrogatories | |
| P22. Plaintiff's Response to Interrogatories | |

Plaintiff reserves the right to use any and all other documents exchanged in discovery or named in Defendant's Pre-Trial Memo. Plaintiff also reserves the right to use any documents necessary for rebuttal, regardless of prior production in discovery.

2. Defendant Intends to introduce the following exhibits:

| **Defendant Exhibits** | **Objections** |
|---|---|
| D1. Transcript of deposition of John Walsh with exhibits. | Objection to moving dep in as Mr. Walsh will be testifying. Any use would be limited to impeachment. |
| D2. Transcript of deposition of Rosemary Walsh with exhibits. | Objection to moving dep in as Mrs. Walsh will be testifying. Any use would be limited to impeachment. |
| D3. Transcript of deposition of Andrew Weaver with exhibits. | Objection to moving dep in as Mr. Weaver will be testifying. Any use would be limited to impeachment. |
| D4. Transcript of deposition of Klodian Belegu with exhibits. | Objection to moving dep in as Mr. Belegu will be testifying. Any use would be limited to impeachment. |

| | |
|---|---|
| D5. May 29, 2020 correspondence from John Ilgen of Nationwide to Plaintiffs rejecting Plaintiffs' demand of $1,450,000.00 to settle Plaintiffs' claim against nationwide arising from the 2018 event. | Objection as hearsay, irrelevant, and unduly prejudicial under 403. |
| D6. August 1, 2018 estimate prepared by Mark Sworaski of Nationwide including 152 pages of photographs of damage from the 2018 event. | Objection as to hearsay. So long as Mr. Sworaski is available to answer questions regarding the estimate, this objection will be withdrawn. |
| D7. Curriculum Vitae of David M. Bekus | |
| D8. July 2, 2023 report of David M. Bekus | |
| D9. November 3, 2025 Supplemental report of David M. Bekus | |

### PART VIII. LAW

    A. Plaintiffs' statement of the legal issues in this case:

    Whether or not Defendant breached its contract with Plaintiff by failing to pay for a covered loss.

    B. Defendant's statement of the legal issues in this case:

    1) Whether Plaintiffs' expert witness, Andrew Weaver, should be permitted to testify as to differentiation between damage caused by the 2018 event and the alleged 2019 event.

### PART IX. MISCELLANEOUS

### PART X. NON-JURY TRIALS (If applicable)

### PART XI. JURY TRIALS

    Trial brief, requested points for charge and proposed *voir dire* to be submitted at least seven (7) days before the first scheduled trial date.

**CONCLUDING CERTIFICATION**

We hereby certify by the affixing of our signatures to this Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this Order prior to its submission to the Court. Further, it is acknowledged that amendments to this Joint Final Pretrial Order will not be permitted except where the Court determines that manifest injustice would result if the amendment is not allowed.

| Attorney for Plaintiffs: | Attorney for Defendant: |
|---|---|
| */s/ Anthony DiUlio* | *Charles B. Stokes, Esquire* |
| Anthony J. DiUlio, Esquire | Charles B. Stokes, Esquire |

Entry of the foregoing Joint Final Pretrial Order is hereby APPROVED this _____ day of _____, 2025.